## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL BEAUCHANE, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br> v.<br><br>AVIS RENT A CAR SYSTEM, LLC, d/b/a AVIS CAR RENTAL<br><br>     Defendant. | Case No. 2:24-cv-9683<br><br><br>**JURY TRIAL DEMANDED** |

### CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Michael Beauchane ("Plaintiff"), who resides at 1112 Franklin Drive, Greenbrier, Tennessee, 37073, brings this action on behalf of himself and all others similarly situated against Defendant, AVIS RENT A CAR SYSTEM, LLC d/b/a AVIS CAR RENTAL ("Avis" or "Defendant"), with its principal place of business located at 379 Interpace Parkway, Parsippany, New Jersey, 07054 and its present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities, and alleges as follows:

### INTRODUCTION

1. Avis and its subsidiaries manage "one of the world's best known car rental brands" spanning approximately 5,500 locations across more than 165 countries.[1] Avis lost control of more than 299,000 of its customers' highly sensitive personally identifying information ("PII") to hackers in a cybersecurity breach on or about August 3, 2024 ("Data Breach"). Despite requiring its customers to provide sensitive PII, including, without limitation, personal information such as names, mailing addresses, email addresses, phone numbers, dates of birth, credit card numbers

---

[1] *Avis Corporate Profile*, AVIS RENT A CAR SYSTEM, LLC, *available at* https://www.avis.com/en/about-avis/company-information/corporate-facts, last visited (Oct. 2, 2024).

with expiration dates and driver's license numbers, Avis entirely failed to implement reasonable security measures to safeguard customer PII. Plaintiff is an Avis customer whose PII was accessed and stolen in the Data Breach. Plaintiff brings this class action on behalf of himself, and all individuals harmed by Avis's conduct.

2.     Avis knew, or should have known, that it is responsible for safeguarding its customers' highly sensitive PII. However, on information and belief, it failed to implement internal policies that would reasonably protect customer data, leaving customers' PII an unguarded target for theft and misuse.

3.     On August 5, 2024, Avis discovered "that an unauthorized third party gained access to one of [its] business applications…" and, after a subsequent investigation, determined that "unauthorized access" to its data systems "occurred between August 3, 2024, and August 6, 2024."[2]

4.     Following its investigation, Avis disclosed few details about the Data Breach and the threat it posed. In a notice provided to various states' attorneys general ("Breach Notice"), Avis disclosed only that cybercriminals accessed one of its business applications, and obtained "personal information"[3], but did not suggest that victims take measures to protect themselves other than in a cursory and general matter; like how "[i]t is always a good idea to remain vigilant against threats of identity theft or fraud."[4]

---

[2] *Notice of Data Breach*, AVIS RENT A CAR SYSTEM, LLC, *available at* https://www.maine.gov/cgi-bin/agviewerad/ret?loc=1225, last visited (Oct. 2, 2024).
[3] In the undersigned's research, none of the Breach Notices Avis provided to various states' attorneys general delineated the precise dataset that was compromised.
[4] *Notice of Data Breach*, *supra*, note 2.

5.     The Data Notice did not disclose how hackers breached its systems, how many times they were breached, exactly what information was stolen, what Avis was doing to prevent future breaches, or why it only issued a bare-bones Breach Notice.

6.     Despite the lifelong harm that the Data Breach poses to its customers, Avis offered only a credit monitoring service (for twelve months), which does not adequately address the harm its customers have and will continue to suffer.

7.     Defendant's conduct harmed its customers, not only in failing to protect their PII but also in deliberately withholding the nature of the Data Breach, meaning the victims were unaware of the precise contours of the risk Avis exposed them to.

## PARTIES

8.     Plaintiff, Michael Beauchane, is a natural person and citizen of Tennessee, residing in Greenbrier, Tennessee, where he intends to remain. Mr. Beauchane is a former Avis customer, who rented vehicle(s) from it from on or around June 2019 through on or around July 14, 2019. Mr. Beauchane is a Data Breach victim who received a copy of the Breach Notice.

9.     Defendant Avis Rent A Car System, LLC d/b/a Avis Car Rental maintains its headquarters at 379 Interpace Parkway, Parsippany, New Jersey, 07054. Avis does business as Avis Car Rental and is organized under the laws of Delaware. Avis styles itself as "one of the world's best known car rental brands" spanning approximately 5,500 locations across more than 165 countries.[5]

10.    All of Plaintiff's claims stated herein are asserted against Defendant and any of its owners, predecessors, successors, subsidiaries, agents and/or assigns.

---

[5] *Avis Corporate Profile*, *supra*, note 1.

**JURISDICTION & VENUE**

11.    This Court has jurisdiction over Plaintiff's claims under 28 U.S.C. § 1332(d)(2) because there are over 100 class members, at least one class member is a citizen of a different state than Avis, and the amount in controversy exceeds $5 million, exclusive of interest and costs.

12.    The Court has personal jurisdiction over Avis because its principal office is located in the State of New Jersey, such that it is at home therein.

13.    Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims emanated from activities within this District and defendant conducts substantial business in this District.

**FACTUAL BACKGROUND**

A.    **Avis's business.**

14.    Avis is a well-known New Jersey-based auto rental company that, as explained *supra*, operates auto rental locations around the world. Avis's parent company, Avis Budget Group ranks among the Fortune 500 list of companies.

15.    Plaintiff and Class members were customers of Defendant whose PII was required to be provided, and was in fact provided, to Avis in conjunction with the rental of its automobiles. Plaintiff and Class members were required to fill out various forms of paperwork with their PII, including without limitation, rental agreements, loan applications, authorization to check credit, and other form documents associated with automobile rental.

16.    Avis required the submission of, and voluntarily accepted, the PII of Plaintiff and Class members as part of its business and had a duty to adopt reasonable measures to protect the PII of Plaintiff and Class members from involuntary disclosure to third parties.

17.    Avis has represented that it "take[s] the privacy and security of [its] customers' information seriously…" in its Breach Notice.[6]

18.    Moreover, Avis's AVIS BUDGET GROUP PRIVACY NOTICE (Avis's "Privacy Policy") recognizes its responsibility for maintaining and securing sensitive data, including customer PII. Specifically, Avis's Privacy Policy represents and warrants that:

**4. HOW INFORMATION IS PROTECTED**

The security of personal information is important to us. We take reasonable steps designed to protect personal information from unauthorized use, access, disclosure, alteration, destruction or loss. You are responsible for keeping your account safe. Do not share your passcode, membership and pin numbers with anyone. Please be mindful that hackers and scammers may impersonate us or our website. For more information about phishing, please visit https://www.consumer.ftc.gov/articles/0003-phishing. If you suspect an unauthorized use or security breach of your information, you must notify our customer service as soon as possible! We are not responsible or liable for any loss or damage if your account passcode, membership numbers and pin numbers are stolen or used inappropriately.[7]

19.    But, on information and belief, Avis fails to adhere to its own internal policies or other reasonable data security standards, leaving vulnerabilities in its systems for cybercriminals to exploit.

**B.    Avis fails to safeguard customers' PII.**

20.    Plaintiff and the proposed Class are current and former Avis customers.

21.    In the course of purchasing products and services from Avis, Avis required its customers to disclose their PII, including but not limited to, names, mailing addresses, email addresses, phone numbers, dates of birth, credit card numbers with expiration dates and driver's license numbers.

22.    Avis collects and maintains customer PII in its computer systems.

23.    In collecting and maintaining that PII, Avis agreed it would safeguard the data according to its internal policies and state and federal law.

---

[6] *Notice of Data Breach*, *supra*, note 2.
[7]    *Avis Budget Group Privacy Notice*, AVIS RENT A CAR SYSTEM, LLC, *available at* https://www.avis.com/en/legal-documents/privacy-notice, last visited (Oct. 2, 2024).

24.     Plaintiff and Class members relied on the sophistication of Defendant and its network to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

25.     Despite those commitments, on or around August 3, 2024 to August 6, 2024, cybercriminals hacked Avis's computer systems and accessed customer PII.

26.     Avis then supposedly took measures to stop the Data Breach, taking steps to "end the unauthorized access" and investigate the scope of the breach. But Avis took no steps to immediately inform its current and former customers about the Data Breach, choosing instead to "investigate" the breach for approximately thirty days.

27.     After conducting its investigation, all Avis could disclose was that "an unauthorized third party gained access to one of [its] business applications" that contained customer PII but provided absolutely no additional details.

28.     To date, Avis has not revealed the mechanism by which the unauthorized actor gained access to its network.

29.     Upon information and belief, the unauthorized actor gained access to Avis's data systems from August 3, 2024, until August 6, 2024, yet Avis discovered the intrusion on August 5, 2024, meaning that the unauthorized actor had access to Defendant's networks for a considerable span of hours *after* Avis detected the breach.

30.     Finally, the following month, Avis disclosed the Data Breach to its current and former customers as well as state regulators.[8] A true and correct copy of the Breach Notice is attached as **Exhibit A** to this Complaint.

31.     Avis estimates that over 299,000 customers were affected by the Data Breach.

---

[8] *Notice of Data Breach*, *supra*, note 2.

32.     Until on or about September 4, 2024, Mr. Beauchane and the proposed Class had no idea their PII had been compromised in a data breach and thus could not proactively mitigate the Data Breach's impact on them.

33.     The Breach Notice admits that customer PII was "obtained" yet it does not identify whether Avis has knowledge of any misuse of the stolen PII, minimizing the threat that the Data Breach poses to Plaintiff and the proposed Class.

34.     The Breach Notice acknowledged the ongoing threat the Data Breach posed to its current and former customers, offering them credit monitoring services. But the "free" services continued for only twelve months.

35.     Notably, the Breach Notice did not explain specifically what steps Avis was taking to prevent future breaches.

36.     On information and belief, Avis failed to adequately train its employees on reasonable cybersecurity protocols or implement reasonable security measures, causing it to lose control over customer PII. Avis' negligence is evidenced by its failure to prevent the Data Breach and stop cybercriminals from accessing PII. Further, the Data Notice and Breach Notice make clear that Avis has not been able to determine whether and how the cybercriminals are misusing the stolen PII, or at least it is not telling anyone how that happened.

**C.     Plaintiff's experience.**

37.     Plaintiff, Michael Beauchane, is a former Avis customer, who rented vehicle(s) from it from on or around June 2019 through on or around July 14, 2019. Mr. Beauchane is a Data Breach victim who received a copy of the Breach Notice.

38.     As part of renting those vehicles, Mr. Beauchane was required to provide his PII.

39.    Mr. Beauchane provided his PII to Avis and trusted that it would use reasonable measures to protect it according to Avis' internal policies and state and federal law.

40.    Following the Data Breach in August of 2024, Avis did not inform Mr. Beauchane about the breach, and he did not know his information had been compromised in the Data Breach until approximately one month later.

41.    Because Avis did not immediately disclose the breach, Mr. Beauchane was unable to take precautionary measures earlier, meaning his PII was unprotected for an entire month while Avis kept its customers in the dark about the breach.

42.    Mr. Beauchane has and will spend considerable time and effort monitoring his accounts to protect himself from additional identity theft. Mr. Beauchane fears for his personal financial security and uncertainty over what PII was exposed in the Data Breach. He has and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

43.    Further, Mr. Beauchane is unsure what has happened to his PII because Avis has been unwilling to disclose the true nature of the Data Breach or what measures it is taking to safeguard his PII in the future.

**D.    Plaintiff and the proposed Class face significant risk of continued identity theft.**

44.    Plaintiff and members of the proposed Class have suffered injury from the misuse of their PII that can be directly traced to Defendant.

45.    As a result of Avis's failure to prevent the Data Breach, Plaintiff and the proposed Class have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. They have suffered or are at an increased risk of suffering:

a.  The loss of the opportunity to control how their PII is used;

b.  The diminution in value of their PII;

c.  The compromise and continuing publication of their PII;

d.  Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

e.  Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

f.  Delay in receipt of tax refund monies;

g.  Unauthorized use of stolen PII; and

h.  The continued risk to their PII, which remains in the possession of Avis and is subject to further breaches so long as Avis fails to undertake the appropriate measures to protect the PII in its possession.

46.    Stolen PII is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII can be worth up to $1,000.00 depending on the type of information obtained.

47.    The value of Plaintiff's and the proposed Class's PII on the black market is considerable. Stolen PII trades on the black market for years, and criminals frequently post stolen private information openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

48.     It can take victims years to spot identity or PII theft, giving criminals plenty of time to milk that information for cash.

49.     One such example of criminals using PII for profit is the development of "Fullz" packages.

50.     Cyber-criminals can cross-reference multiple sources of PII to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

51.     The development of "Fullz" packages means that stolen PII from the Data Breach can easily be used to link and identify it to Plaintiff and the proposed Class's phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and members of the proposed Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff and other members of the proposed Class's stolen PII is being misused, and that such misuse is fairly traceable to the Data Breach.

52.     Avis disclosed the PII of Plaintiff and members of the proposed Class for criminals to use in the conduct of criminal activity. Specifically, Avis opened up, disclosed, and exposed the PII of Plaintiff and members of the proposed Class to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial

accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen PII.

53.     Avis' failure to properly notify Plaintiff and members of the proposed Class of the Data Breach exacerbated Plaintiff and members of the proposed Class's injury by depriving them of the earliest ability to take appropriate measures to protect their PII and take other necessary steps to mitigate the harm caused by the Data Breach.

## CLASS ACTION ALLEGATIONS

54.     Mr. Beauchane sues on behalf of himself and the proposed Classes ("Class"), under Rule 23(b)(2) and Rule 23(b)(3), defined as follows:

> All individuals residing in the United States whose PII was compromised in the Data Breach.

Excluded from the Class are Avis, its agents, affiliates, parents, subsidiaries, any entity in which Avis has a controlling interest, any Avis officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

55.     Mr. Beauchane reserves the right to amend the class definition.

56.     This action satisfies the numerosity, commonality, typicality, and adequacy requirements under Fed. R. Civ. P. 23.

   a. **Numerosity**. Mr. Beauchane is a representative of the proposed Class, consisting of over 299,000 members—far too many to join in a single action;

   b. **Ascertainability**. Class members are readily identifiable from information in Avis's possession, custody, and control;

   c. **Typicality**. Mr. Beauchane's claims are typical of Class member's claims as each arises from the same Data Breach, the same alleged negligence and statutory

violations by Avis, and the same unreasonable manner of notifying individuals about the Data Breach.

d. **<u>Adequacy</u>**. Mr. Beauchane will fairly and adequately protect the proposed Class's interests. His interests do not conflict with Class members' interests and he has retained counsel experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf, including as lead counsel.

e. **<u>Commonality</u>**. Mr. Beauchane and the Class's claims raise predominantly common fact and legal questions that a class wide proceeding can answer for all Class members. Indeed, it will be necessary to answer the following questions:

    i. Whether Avis had a duty to use reasonable care in safeguarding Mr. Beauchane's and the Class's PII;

    ii. Whether Avis failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

    iii. Whether Avis was negligent in maintaining, protecting, and securing PII;

    iv. Whether Avis breached contract promises to safeguard Mr. Beauchane's and the Class's PII;

    v. Whether Avis took reasonable measures to determine the extent of the Data Breach after discovering it;

    vi. Whether Avis' Breach Notice was reasonable;

    vii. Whether the Data Breach caused Mr. Beauchane and the Class injuries;

    viii. What the proper damages measure is;

    ix. Whether Avis violated the statutes alleged in this complaint; and

x.  Whether Mr. Beauchane and the Class are entitled to damages, treble damages, or injunctive relief.

57.    Further, common questions of law and fact predominate over any individualized questions, and a class action is superior to individual litigation or any other available method to fairly and efficiently adjudicate the controversy. The damages available to individual plaintiffs are insufficient to make individual lawsuits economically feasible.

### COUNT I
### Negligence
### (On Behalf of Plaintiff and the Class)

58.    Plaintiff and members of the Class incorporate the above allegations as if fully set forth herein.

59.    Plaintiff and members of the Class entrusted their PII to Defendant. There was an intimate nexus between the Parties, such that Defendant owed to Plaintiff and other members of the Class a duty to exercise reasonable care in handling and using the PII in its care and custody, including implementing industry-standard security procedures sufficient to reasonably protect the information from the Data Breach, theft, and unauthorized use that came to pass, and to promptly detect attempts at unauthorized access.

60.    Defendant owed a duty of care to Plaintiff and members of the Class because it was foreseeable that Defendant's failure to adequately safeguard their PII in accordance with state-of-the-art industry standards concerning data security would result in the compromise of that PII—just like the Data Breach that ultimately came to pass. Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's and members of the Class's PII by disclosing and providing access to this information to third parties and by failing to properly

13

supervise both the way the PII was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

61.     Defendant owed to Plaintiff and members of the Class a duty to notify them within a reasonable time frame of any breach to the security of their PII. Defendant also owed a duty to timely and accurately disclose to Plaintiff and members of the Class the scope, nature, and occurrence of the Data Breach. This duty is required and necessary for Plaintiff and members of the Class to take appropriate measures to protect their PII, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

62.     Defendant owed these duties to Plaintiff and members of the Class because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security protocols. Defendant actively sought and obtained Plaintiff's and members of the Class's PII in the course of selling them products and services. Plaintiff and members of the Class were required to provide their personal information and PII to Defendant as part of the transactions for products and services with Defendant.

63.     The risk that unauthorized persons would attempt to gain access to the PII and misuse it was foreseeable. Given that Defendant holds vast amounts of PII, it was inevitable that unauthorized individuals would attempt to access Defendant's databases containing the PII— whether by malware or otherwise.

64.     PII is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the PII of Plaintiff's and members of the Class's and the importance of exercising reasonable care in handling it.

65.     Defendant breached its duties by failing to exercise reasonable care in supervising its agents, contractors, vendors, and suppliers, and in handling and securing the personal information and PII of Plaintiff and members of the Class which actually and proximately caused the Data Breach and Plaintiff's and members of the Class's injury. Defendant further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and members of the Class, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff's and members of the Class's injuries-in-fact. As a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiff and members of the Class have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

66.     Defendant's breach of its common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiff and members of the Class actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their PII by criminals, improper disclosure of their PII, lost benefit of their bargain, lost value of their PII, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

67.     Pursuant to the FTC Act, 15 U.S.C. § 45, Defendant further had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff's and members of the Class's PII.

68.     Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect customers' PII. The FTC publications

and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiff and the members of the Class's sensitive PII.

69.    Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect its customers' PII and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII Defendant had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to its customers in the event of a breach, which ultimately came to pass.

70.    The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and members of the Class.

71.    Defendant had a duty to Plaintiff and the members of the Class to implement and maintain reasonable security procedures and practices to safeguard Plaintiff's and the Class's PII.

72.    Defendant breached its respective duties to Plaintiff and members of the Class under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and members of the Class's PII.

73.    Defendant's violation of Section 5 of the FTC Act and its failure to comply with applicable laws and regulations constitutes evidence of its negligence.

74.    But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff and members of the Class, Plaintiff and members of the Class would not have been injured.

75.    The injury and harm suffered by Plaintiff and members of the Class were the reasonably foreseeable result of Defendant's breach of their duties. Defendant knew or should have

known that Defendant was failing to meet its duties and that its breach would cause Plaintiff and members of the Class to suffer the foreseeable harms associated with the exposure of their PII.

76.     Had Plaintiff and members of the Class known that Defendant did not adequately protect customers' PII, Plaintiff and members of the Class would not have entrusted Defendant with their PII.

77.     As a direct and proximate result of Defendant's negligence, Plaintiff members of the Class have suffered harm, including loss of time and money resolving fraudulent charges; loss of time and money obtaining protections against future identity theft; financial losses related to the products and services Plaintiff and members of the Class paid for that they would not have received had they known of Defendant's careless approach to cyber security; lost control over the value of PII; unreimbursed losses relating to fraudulent charges; losses relating to exceeding credit and debit card limits and balances; harm resulting from damaged credit scores and information; and other harm resulting from the unauthorized use or threat of unauthorized use of stolen personal information, entitling them to damages in an amount to be proven at trial.

## COUNT II
### Breach of an Express/Implied Contract
### (On Behalf of Plaintiff and the Class)

78.     Plaintiff and members of the Class incorporate the above allegations as if fully set forth herein.

79.     Defendant offered products and services to Plaintiff and members of the Class in exchange for money. Plaintiff and members of the Class also entrusted their PII to Defendant.

80.     In turn, and through internal policies, Defendant agreed it would not disclose the PII it collects from customers to unauthorized persons. Defendant impliedly promised to safeguard customers' PII.

81.     Plaintiff and the members of the Class accepted Defendant's offer by providing PII and money to Defendant in exchange for products and services from the Defendant.

82.     The Parties' agreement was supported by valuable consideration, as the Parties exchanged products and services for money.

83.     Implicit in the parties' agreement was that Defendant would provide Plaintiff and members of the Class with prompt and adequate notice of all unauthorized access and/or theft of their PII.

84.     Also implicit in the parties' agreement was that Defendant would adequately safeguard and protect Plaintiff and the Class's PII.

85.     Plaintiff and the members of the Class would not have entrusted their PII to Defendant in the absence of such agreement with Defendant.

86.     Defendant materially breached the contract(s) it had entered with Plaintiff and members of the Class by failing to safeguard such information and failing to notify them promptly of the intrusion into its computer systems that compromised such information. Defendant further breached the implied contracts with Plaintiff and members of the Class by:

a.   Failing to properly safeguard and protect Plaintiff and members of the Class's PII;

b.   Failing to comply with industry standards as well as legal obligations that are necessarily incorporated into the parties' agreement; and

c.   Failing to ensure the confidentiality and integrity of electronic PII that Defendant created, received, maintained, and transmitted.

87.     The damages sustained by Plaintiff and members of the Class as described above were the direct and proximate result of Defendant's material breaches of its agreement(s).

88.     Plaintiff and members of the Class have performed as required under the relevant agreements, or such performance was waived by the conduct of Defendant.

89.     New Jersey law imposes on contracting parties an implied duty of good faith and fair dealing into every agreement.

90.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.

91.     Defendant failed to advise Plaintiff and members of the Class of the Data Breach promptly and sufficiently.

92.     Defendant also failed to reasonably safeguard Plaintiff and the Class's PII through data security policies, procedures and programs.

93.     In these and other ways, Defendant violated its duty of good faith and fair dealing.

94.     Plaintiff and members of the Class have sustained damages because of Defendant's breaches of its agreement, including breaches thereof through violations of the covenant of good faith and fair dealing.

**COUNT III**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

95.     Plaintiff and members of the Class incorporate the above allegations as if fully set forth herein.

96.     This claim is pleaded in the alternative to the breach of implied contractual duty claim.

97.     Plaintiff and members of the Class conferred a benefit upon Defendant in the form of the purchase of products and services.

98.     Defendant appreciated or had knowledge of the benefits conferred upon itself by Plaintiff and members of the Class. Defendant also benefited from the receipt of Plaintiff's and members of the Class's money and PII, as this was used to facilitate their purchases of products and services.

99.     Under principals of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiff and the proposed Class's purchases of products and services and their PII because Defendant failed to adequately protect their PII. Plaintiff and the proposed Class would not have provided their PII or purchase products and services from the Defendant had they known Defendant would not adequately protect their PII.

100.    Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and members of the Class all unlawful or inequitable proceeds received by it because of its misconduct and Data Breach.

**COUNT IV**
**Violation of the New Jersey Consumer Fraud Act**
**N.J.S. § 56:8-1, *et seq.***
**(On behalf of Plaintiff and the Class)**

101.    Plaintiff and members of the Class incorporate the above allegations as if fully set forth herein.

102.    The New Jersey Consumer Fraud Act ("NJCFA") protects both consumers and competitors by promoting fair competition in commercial markets for goods and services.

103.    The NJCFA prohibits any unlawful, unfair, or fraudulent business acts or practices including the employment of any deception, fraud, false pretense, false promise, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact.

104. The NJCFA applies to Defendant's actions and conduct as described herein because it protects consumers in transactions that are intended to result, or which have resulted, in the sale of goods or services.

105. Defendant is a "person" as defined under section 56:8-1(d) of the NJCFA.

106. Defendant's conduct as alleged herein relates to "sale" as defined by section 56:8-1(e) of the NJCFA.

107. Plaintiff and the members of the Class are each a "person" as defined under section 56:8-1(d) of the NJCFA.

108. Defendant advertises, offers, and sells "merchandise" as defined by section 56:8-1(d) of the NJCFA.

109. Defendant advertises, offers, or sells goods or services in New Jersey and elsewhere and engages in trade or commerce directly or indirectly affecting the people of New Jersey.

110. Defendant engaged in unfair and deceptive practices in violation of the NJCFA, by:

a. Making false or misleading oral and written representations with the capacity or tendency, or effect, of deceiving or misleading consumers;

b. Failing to state a material fact where the failure deceives or intends to deceive;

c. Advertising or offering consumer goods or services without intent to sell them as advertised or offered; and

d. Engaging in deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with the promotion or sale of consumer goods or services or the subsequent performance with respect to an agreement.

111.    Specifically, Defendant engaged in these unfair and deceptive trade practices in connection with the sale or selling of consumer goods or services, in violation of the NJCFA, by:

a.  Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff and the Classes' PII, which was a direct and proximate cause of the Data Breach.

b.  Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Data Breach.

c.  Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and the Classes' PII, including duties imposed by the Section 5 of the FTC Act, which was a direct and proximate cause of the Data Breach.

d.  Misrepresenting that it would protect Plaintiff's and the Classes' PII.

e.  Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and the Classes' PII, including duties by Section 5 of the FTC Act, which was a direct and proximate cause of the Data Breach.

f.  Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff's and the Classes' PII.

112.    Defendant was aware or should have been aware that it was not implementing security protections as outlined above.

113.     Defendant acted intentionally, knowingly, and maliciously to violate the NJCFA, as it was on notice of the possibility of the Data Breach due to the massive proliferation of cybersecurity incidents in recent years.

114.     Defendant intended to mislead Plaintiff and the Classes and induce them to rely on its misrepresentations and omissions.

115.     Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' personal and confidential information.

116.     Had Defendant not engaged in the deceptive omission of material facts described above, Plaintiff would have been presented with an informed choice as to whether or not to purchase products and services from Defendant.

117.     Plaintiff and the Class were injured by Defendant's unfair and deceptive acts, and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages. This includes damages from fraud and identity theft, time and expenses related to monitoring their financial accounts for fraudulent activity, an increased imminent risk of fraud and identity theft, and the loss of value of their PII.

118.     Had Defendant disclosed its true security practices, Plaintiff and the Class either would not have purchased products or services from the Defendant or would have paid substantially less for them.

119.     As a direct and proximate result of Defendant's violation of the NJCFA, Plaintiff and each member of the Class have suffered harm in the form of monies paid for Defendant's products and/or services.

120.    Plaintiff, on behalf of himself and the Class, seeks an order (1) requiring Defendant to cease the unfair practices described herein; (2) awarding damages, including treble damages, interest, and reasonable attorneys' fees, expenses, and costs to the extent allowable; and/or (3) requiring Defendant to restore to Plaintiff and members of the Class any money acquired by means of unfair competition (restitution).

**COUNT V**
**Declaratory Judgment**
**(On Behalf of Plaintiff and the Class)**

121.    Plaintiff and members of the Class incorporate the above allegations as if fully set forth herein.

122.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as those alleged herein, which are tortious and which violate the terms of the federal and state statutes described above.

123.    An actual controversy has arisen in the wake of the Data Breach at issue regarding Defendant's common law and other duties to act reasonably with respect to employing reasonable data security. Plaintiff alleges Defendant's actions in this respect were inadequate and unreasonable and, upon information and belief, remain inadequate and unreasonable. Additionally, Plaintiff and the Class continue to suffer injury due to the continued and ongoing threat of new or additional fraud against them or on their accounts using the stolen data.

124.    Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a.  Defendant owed, and continues to owe, a legal duty to employ reasonable data security to secure the PII with which it is entrusted and to notify impacted individuals of the Data Breach under the common law and Section 5 of the FTC Act;

b.  Defendant breached, and continues to breach, its duty by failing to employ reasonable measures to secure its customers' personal and financial information; and

c.  Defendant's breach of its legal duty continues to cause harm to Plaintiff and the Class.

125.  The Court should also issue corresponding injunctive relief requiring Defendant to employ adequate security protocols consistent with industry standards to protect its clients' (i.e., Plaintiff's and the Class's) data.

126.  If an injunction is not issued, Plaintiff and the Class will suffer irreparable injury and lack an adequate legal remedy in the event of another breach of Defendant's data systems. If another breach of Defendant's data systems occurs, Plaintiff and the Class will not have an adequate remedy at law because many of the resulting injuries are not readily quantified in full and they will be forced to bring multiple lawsuits to rectify the same conduct. Simply put, monetary damages, while warranted to compensate Plaintiff and the Class for their out-of-pocket and other damages that are legally quantifiable and provable, do not cover the full extent of injuries suffered by Plaintiff and the Class, which include monetary damages that are not legally quantifiable or provable.

127.  The hardship to Plaintiff and the Class if an injunction does not issue exceeds the hardship to Defendant if an injunction is issued.

25

128.    Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing another data breach, thus eliminating the injuries that would result to Plaintiff, the Class, and the public at large.

**COUNT VI**
**Invasion of Privacy**
**(On behalf of Plaintiff and the Class)**

129.    Plaintiff and members of the Class incorporate the above allegations as if fully set forth herein.

130.    Plaintiff and the Class had a legitimate expectation of privacy regarding their highly sensitive and confidential PII and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

131.    Defendant owed a duty to its customers, including Plaintiff and the Class, to keep this information confidential.

132.    The unauthorized acquisition (*i.e.*, theft) by a third party of Plaintiff's and Class Members' PII is highly offensive to a reasonable person.

133.    The intrusion was into a place or thing which was private and entitled to be private. Plaintiff and the Class disclosed their sensitive and confidential PII to Defendant in order to facilitate a consumer transaction, but did so privately, with the intention that their information would be kept confidential and protected from unauthorized disclosure. Plaintiff and the Class were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

134.    The Data Breach constitutes an intentional interference with Plaintiff's and the Class's interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

135.    Defendant acted with a knowing state of mind when it permitted the Data Breach because it knew its information security practices were inadequate.

136.    Defendant acted with a knowing state of mind when it failed to notify Plaintiff and the Class in a timely fashion about the Data Breach, thereby materially impairing their mitigation efforts.

137.    Acting with knowledge, Defendant had notice and knew that its inadequate cybersecurity practices would cause injury to Plaintiff and the Class.

138.    As a proximate result of Defendant's acts and omissions, the private and sensitive PII of Plaintiff and the Class were stolen by a third party and is now available to disclosure and rediscolusre without authorization, causing Plaintiff and the Class to suffer damages.

139.    Unless and until enjoined and restrained by order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class since those records are still maintained by Defendant with their inadequate cybersecurity system and policies.

140.    Plaintiff and the Class have no adequate remedy at law for the injuries relating to Defendant's continued possession of their sensitive and confidential PII. A judgment for monetary damages will not end Defendant's inability to safeguard the PII of Plaintiff and the Class.

141.    In addition to injunctive relief, Plaintiff, on behalf of himself and the other members of the Class, also seeks compensatory damages for Defendant's invasion of privacy, which includes the value of the privacy interest invaded by Defendant, the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest, and costs.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually, on behalf of himself and all others similarly situated, requests the following relief:

A.      An Order certifying this action as a class action and appointing Plaintiff as Class representative and his counsel as Class counsel;

B.      A mandatory injunction directing Avis to safeguard the PII of Plaintiff and the Class hereinafter adequately by implementing improved security procedures and measures;

C.      A mandatory injunction requiring that Avis provide notice to each member of the Class relating to the full nature and extent of the Data Breach and the disclosure of PII to unauthorized persons;

D.      An award of compensatory, restitutionary, punitive, exemplary, and statutory damages, as permitted by law.

E.      An award of pre- and post-judgment interest, costs, attorneys' fees, expenses, and interest as permitted by law; and

F.      Such other and further relief as this court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.


Dated: October 9, 2024                    Respectfully submitted,

                                 By:    */s/ Patrick Howard*
                                      Patrick Howard (NJ Atty ID #02280-2001)
                                      phoward@smbb.com
                                      **SALTZ MONGELUZZI & BENDESKY, P.C.**
                                      8000 Sagemore Drive, Suite 8303
                                      Marlton, NJ 08053
                                      Tel: (856) 751-0868

Joe P. Leniski, Jr.*
joey@hsglawgroup.com
**HERZFELD, SUETHOLZ, GASTEL,
LENISKI and WALL, PLLC**
223 Rosa L. Parks Avenue, Suite 300
Nashville, Tennessee 37203
Tel: (615) 800-6225

Peter J. Jannace*
peter@hsglawgroup.com
**HERZFELD, SUETHOLZ, GASTEL,
LENISKI and WALL, PLLC**
515 Park Avenue
Louisville, Kentucky 40208
Tel: (502) 636-4333

*Attorneys for Plaintiff Michael Beauchane*

*\*Pro Hac Vice admission forthcoming*